UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

AUG 1 4 2019

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
DEPUTY

MATTHEW HIGHTOWER

    Movant

                    Criminal No. MJG-15-322

Vs.

                    Civil No. GJH-19-1719

UNITED STATES OF AMERICA

    Respondent

_____/

## MOVANT MATTHEW HIGHTOWER'S APPLICATION FOR WRIT OF HABEAS CORPUS AND INCORPORATED MEMORANDUM OF LAW PURSUANT TO 28 U.S.C. §2255

**Name:**     Matthew Hightower

**Prisoner No.**   40293-037

**Place of Confinement:**

> FCI Hazleton
> P.O. Box 500
> Bruceton Mills, WV 26525

1. **Name of Court that entered judgment:** United States District Court of Maryland, Northern Division.

2. **Case Number:** MJG-15-322

3. **Date of Judgment:** The judgment was entered on November 30, 2016 (Doc. 358).

4. **Date of Sentencing:** November 30, 2016

5. **Length of Sentencing:** 380 months total

6. **Plea entered:** Not guilty

7. **Trial:** Jury

1

8.  **Nature of Offense:**

    Count 1     Extortion in violation of 18 U.S.C. 894, and 2
    Count 2     Use of Interstate Facilities for Extortion in violation of 18 U.S.C.
                1952, and 2

9.  **Third Indictment:** Mr. Hightower proceeded to trial on a third superseding indictment before the Honorable Marvin J. Garbis, on September 12, 2016. On September 22, 2016, the jury returned a guilty verdict as to Mr. Hightower on all counts in which he was named. (Doc. 297).

10. **Sentencing:** Mr. Hightower was sentenced on November 30, 2016 to 380 months imprisonment, consisting of 240 months as to Count One; and 380 months imprisonment as to Count Two, all to run concurrently. (Doc. 358). The court also imposed 5 years of supervised release – in total, and a $300 assessment.

11. **Direct Appeal:** Mr. Hightower noted a timely appeal in this matter to the Fourth Circuit Court of Appeals on December 1, 2016 (Doc. 360), Case No. 16-4796.

12. **Result:** The Fourth Circuit's opinion in Mr. Hightower's direct appeal is unpublished and can be found at *United States v. Hightower,* 714 Fed. Appx. 268 (4th Cir. 2018). The Fourth Circuit affirmed Mr. Hightower's conviction.

13. **Date of Result:** March 12, 2018.

14. **Grounds raised:** Mr. Hightower raised two grounds on appeal:

    (1) Whether 18 U.S.C. 894 is unconstitutional under the Commerce Clause;
    (2) Whether the evidence was insufficient to show that there was federal jurisdiction under 1952 where there was only an incidental and minimal interstate nexus insufficient to establish a violation of either statute.

15. **Petition for Writ of Certiorari to the U.S. Supreme Court:** No petition was filed.

16. **Statement of the Case:**

    Mr. Hightower worked as a delivery driver at RX Resources and Solutions, a drug company owned by co-defendant, Harry Crawford. In the spring of 2013, Crawford asked Mr. Hightower to loan his long-time friend and former business partner, David Wutoh, $15,000, of which Mr. Wutoh promised to pay Mr. Hightower $20,000 within a few months. When Mr. Wutoh did not timely repay the money, Mr. Hightower added turbo interest, so the total amount owed climbed to $23,000.

17. At the time of this loan, Mr. Wutoh was in significant financial distress and suffering from serious health issues. Mr. Wutoh had been receiving disability payments due to increasingly disabling health complications resulting from diabetes. While Wutoh collected disability payments, these payments arrived irregularly, and by 2013, Wutoh's MetLife payments stopped altogether.

18. Soon after, Mr. Wutoh had trouble repaying the loan and evidence was presented at trial that the defendant and Harry Crawford began to insist upon repayment, some of this evidence was captured via text message. Mr. Wutoh gave assurances that he would repay the loan, but was stymied by ill health. Other evidence suggested that Mr. Wutoh began repaying the loan by providing prescription drugs to Mr. Hightower.

19. When that wasn't enough, the government alleges that Mr. Hightower decided to kill Mr. Wutoh in reprisal. It is alleged that on September 21, 2013, while Mr. Wutoh was sitting in the family room of a house belonging to a friend, that he was shot and

killed by defendant. Defendant admitted that Mr. Wutoh owed him money, but denied being involved in his murder, stating that he had no reason to kill Mr. Wutoh especially since Mr. Wutoh was incrementally repaying the debt.

20.     **Grounds upon which this motion is based:**

**GROUND ONE:**     Mr. Hightower was denied his Sixth Amendment right to the effective assistance of counsel where his trial counsel failed to object to the application of the cross-reference to second-degree murder.

Mr. Hightower argued that he was denied his Sixth Amendment right to the effective assistance of counsel where his trial counsel failed to object to the application of the cross-reference to second-degree murder. The Sixth Amendment to the United States Constitution provides that an accused has a right to assistance of counsel in his defense in order that a fair trial shall result. *Strickland v. Washington*, 466 U.S. 668, 685 (1984). The Sixth Amendment commands more than just the presence of a lawyer alongside the accused during a trial, "the right to counsel is the right to the effective assistance of counsel." *Id.* at 686. When the *Strickland* effective assistance standard is applied, the sole purpose, is "to ensure a fair trial," and is used as the measuring tool with which to gauge counsel's performance. *Id.*

Under *Strickland,* the petitioner must demonstrate deficient performance and a reasonable probability that, but for his counsel's unreasonable errors, the "'result of the proceeding would have been different.'" *United States v. Mero*, 755 Fed. Appx. 336, 337 (4th Cir. 2019) (citation omitted). The prejudicial effect of counsel's deficient performance need not meet a preponderance of the evidence standard; the test is whether the trial can be relied

4

on as "having produced a just result." *Strickland*, 466 U.S. at 686, 693. The standard of review "is a mixed question of law and fact." *Id.* at 698.

The "performance component" requires a petitioner to "show that counsel's performance was deficient," and "counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment." *Id.* at 687. To prevail under this prong, a defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness" under prevailing professional norms. *Id.* at 688. Although the *Strickland* Court refused to provide a concrete definition, the Court did provide some examples, although not an exhaustive checklist, of what duties counsel owes to a defendant.[1] The Court opined that it could not merely provide examples of what counsel is required to do because an exhaustive checklist would interfere with the "independence of counsel," and "restrict the wide latitude counsel must have in making tactical decisions." *Id.* at 689.

Under the "performance" prong, the petitioner must rebut the presumption that counsel's actions were the result of "sound trial strategy." *Id.* In contrast to the "prejudice component," counsel's actions under the "performance component" are not examined from a totality of the evidence standard. Single isolated errors of counsel are enough, by themselves, to establish deficient performance under *Strickland*. *See Murray v. Carrier*, 477 U.S. 478, 495 (1986).

---

[1] Counsel owes a duty of loyalty, a duty to avoid conflicts of interest, a duty to advocate, a duty to consult with the accused in important decisions, a duty to keep the defendant informed of important developments, a duty to conduct a reasonable investigation into the facts and law, and a duty to possess and execute enough skill and knowledge to ensure a fair trial. *Strickland* 466 U.S. at 688-90.

The "prejudice component" requires a petitioner to show that counsel's errors prejudiced the accused, and were so grave as to deny the petitioner of his constitutionally guaranteed right to a fair trial. *Strickland*, 466 U.S. at 687. Prejudice, in most cases,[2] must be affirmatively shown by a defendant. *Id.* at 692. The defendant is required to make a showing that "there is a reasonable probability, a probability sufficient to undermine confidence in the outcome, that but for counsel's unprofessional errors, the result of the proceeding would have been different," i.e., a factfinder finding a reasonable doubt as to guilt. *Id.* at 694. The United States Supreme Court has expressly rejected the outcome determinative test, whereby the defendant must prove that the outcome of the trial would have been different. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). The courts instead consider, "whether the result of the proceeding was fundamentally unfair or unreliable." *Id.*

Unlike the "performance component," the totality of the evidence must be considered when considering the "prejudice component." *Strickland*, 466 U.S. at 695-96. The Court explained that, "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696.

Finally, the appropriate remedy in an ineffective assistance claim should be "tailored to the injury suffered from the constitutional violation." *United States v. Morrison*, 449 U.S. 361, 364 (1981). Thus, if both the "performance" and "prejudice" prongs are satisfied in an ineffective assistance of trial counsel claim, the appropriate remedy is the granting of a new

---

2 There are limited circumstances where prejudice is presumed, i.e., "when counsel is burdened by an actual conflict of interest." *Strickland*, 466 U.S. at 692.

trial, or, if the error occurred at sentencing, a new sentencing. Similarly, if both prongs are satisfied in an ineffective assistance of appellate counsel claim, the remedy is the granting of a belated, or new, appeal. *See Simmons v. Reynolds*, 898 F.2d 865, 869 (2d Cir. 1990).

In this case, the district court applied a cross-reference to second-degree murder under USSG §2A1.2, for the shooting death of Mr. Wutoh. The court applied this provision after determining that the applicable guideline for a violation of 18 U.S.C. §1952(a)(2)(3) is USSG §2E1.2, which provides, in pertinent part, base offense level 6 or (2) "the offense level applicable to the underlying crime of violence or other activity in respect to which the travel or transportation was undertaken." *Id*; *see United States v. Jordan*, 16 F. Supp. 2d 658, 659 (E.D. Va. 1998). Here, the district court found that the underlying crime of violence was second-degree murder, and thus applied base offense **level 38**, pursuant to §2A1.2. In doing so, however, the court expressly found that the Government **did not prove** that Mr. Hightower *intended to kill* Mr. Wutoh. Therein lies the rub.

For the court to have applied the cross-reference for second-degree murder, it was first required to determine the most analogous federal offense when compared with state law. It did not. Specifically, 2E1.2 app. n.2, provides that "[i]f the underlying conduct violates *state law*, the offense level corresponding to the most analogous federal offense is to be used." *Id*. Here, the district court did not find that Mr. Hightower acted with *premeditation*, and so first-degree murder is off the table. The court did find, however, that Mr. Hightower was guilty of second-degree murder. But second-degree murder under Maryland law requires a specific "intent to kill," *see Banks v. State*, 92 Md. App. 422, 439 (1992), which, in this case, the district court did not find.

7

**GROUND TWO:**     Mr. Hightower was denied his right to the effective assistance of counsel where his trial counsel failed to object at sentencing to the testimony of Detective Serrano on the ground that the testimony was not relevant conduct within the meaning of USSG 1B1.3.

Trial counsel was ineffective for failing to object at sentencing to the testimony of Detective Serrano on the ground that the testimony was not relevant conduct, and thus, irrelevant. *See Strickland*, supra. In order to bolster its claim that Mr. Hightower was responsible for the shooting death of Mr. Wutoh, the Government put on the testimony of Detective Serrano, who testified that Mr. Hightower was previously implicated in the shooting of another individual. So, as the argument goes, did it once, did it twice. This evidence was inflammatory, highly inflammatory, and not relevant to the issue of whether Mr. Hightower was guilty of shooting Mr. Wutoh.

Relevant conduct is defined as "actions 'that were part of the same course of conduct or common scheme or plan as the offense of conviction.'" USSC 1B1.3(a)(2); *United States v. Moore*, 918 F.3d 368, 370 (4th Cir. 2019). It is clear that information relating to a years old alleged shooting was not part of the *same course of conduct* as the charged offense in this case. *See United States v. Phillips*, 1997 U.S. App. LEXIS 29807 (4th Cir. 1997). To be relevant, there must be a "temporal proximity between the offense of conviction and the uncharged conduct." *United States v. Mullins*, 971 F.2d 1138, 1144 (4th Cir. 1992). None exists in this case.

Failing to object to Detective Serrano's testimony was deficient performance that prejudiced the defense. Mr. Serrano's testimony was used for the sole purpose of establishing *conduct in conformity* therewith the alleged murder of Mr. Wutoh, which was impermissible and highly prejudicial. *See United States v. Sanders*, 964 F.2d 295, 297-98 (4th Cir. 1992).

**GROUND THREE:** Mr. Hightower was denied his right to the effective assistance of counsel where trial counsel failed to investigate and correct factual errors related to MVA records.

Trial counsel was ineffective for failing to investigate and correct factual errors related MVA records. A large part of the Government's case against Mr. Hightower centered on its claim that Mr. Hightower purchased a from truck from Ms. Zantia Jones, on the afternoon of September 21, 2013, and that he asked Ms. Jones to permit him to retain her tags on the truck – overnight, so that he could perpetrate the murder of Mr. Wutoh, which conveniently occurred on the following morning, September 22, 2013. The Government's theory in this regard is demonstrably untrue, and Mr. Bardos did not correct this factual error before the jury.

Specifically, MVA records clearly show that Mr. Hightower did, in fact, have his own tags and Geico insurance for the truck on the afternoon of September 21, 2013. Mr. Hightower brought this information to Mr. Bardos's attention prior to trial, and Mr. Bardos assured Mr. Hightower that he would use the information to shatter the Government's theory if they presented their case along these lines. But he did not. Nor did Mr. Bardos highlight the fact that Ms. Jones's testimony (i.e., that Mr. Hightower was with her attempting to secure her truck tags on the afternoon of September 21, 2013) was demonstrably false, when compared with Agent Wilde's expert testimony that Mr. Hightower was in the Mondawmin and Penn North areas during the entire afternoon of September 21, 2013, especially between the hours of 1:19pm and 2:40pm. That testimony stands in stark contrast to Ms. Jones's testimony that Mr. Hightower was with her in

9

Dorchester and Central Park Heights, from approximately 1:48pm and 1:54pm. Clearly, Dorchester and Central Park Heights is nowhere near Mondawmin and Penn North.

The jury should have been privy to the information, and counsel's failure to bring it to the jury's attention was constitutionally deficient performance, and the error prejudiced the defense. *See Alcala v. Woodford*, 334 F.3d 862, 868 (9th Cir. 2003) (counsel ineffective for failing to present evidence showing that defendant was in a different location when the alleged crime occurred).

**GROUND FOUR:** Mr. Hightower was denied his right to the effective assistance of counsel where trial counsel stipulated to a discovery agreement that deprived him of his right to effectively participate in his own defense.

Trial counsel was ineffective for signing and stipulating to a discovery agreement, that deprived Mr. Hightower of his right to effectively participate in his own defense. Without Mr. Hightower's knowledge nor consent, counsel Bardos signed and stipulated to a discovery agreement which provided that Mr. Bardos would not provide Mr. Hightower with copies of the discovery, which, in turn, prevented Mr. Hightower from noting to Mr. Bardos several material errors of fact in the Government's case. One such error was the fact that Mr. Hightower had already purchased tags and insurance for his truck, which is contrary to Ms. Jones's testimony that Mr. Hightower requested that she permit him to keep her tags on the vehicle. Another error was that the Government's own evidence showed that Mr. Hightower was in a completely different area than the area that Ms. Jones said he was in during her testimony.

The error was not only in just stipulating to the discovery agreement without Mr. Hightower's consent, but also because the agreement effectively prevented Mr. Hightower

from assisting in his defense; namely, by pointing to factual errors in the Government's case that Mr. Bardos was unfamiliar with, absent an understanding of the facts from Mr. Hightower.

**GROUND FIVE**: Mr. Hightower was denied his right to the effective assistance of counsel on appeal.

Mr. Hightower was denied his right to the effective assistance of appellate counsel where his appellate counsel failed to argue (1) that Mr. Hightower's sentence was substantively unreasonable; (2) that the district court erred in denying his motion to dismiss count-two of the indictment; and (3) that the district court erred in denying his motion to suppress.

**Mr. Hightower's Sentence was Substantively Unreasonable**

Mr. Hightower's sentence on count-one is substantively unreasonable. Here, in imposing sentence on count-one, the district court imposed the statutory maximum sentence – 20 years, although Mr. Hightower's guidelines range was, at most, 121-151 months. The court did not make any findings as to how it reached its decision to impose maximum punishment for this count. *See United States v. Brooks*, 524 F.3d 549, 571 (4th Cir. 2008); *United States v. Flores*, 477 F.3d 431, 439 (6th Cir. 2007).

The length of a federal sentence is determined by the District Court's application of 18 USC § 3553(a). *See United States v. Booker*, 543 U.S. 220, 260 (2005). While the Guidelines are intended to present a rough approximation of the 18 USC § 3553(a) factors, *Kimbrough v. United States*, 552 U.S. 85 (2007), makes clear that in some cases the Guidelines and statutory factors appropriately diverge. *Rita v. United States*, 551 U.S. 338, 351 (2007) (approving §3553(a) variance on the basis of policy disagreement with the Guidelines). A

District Court must impose a sentence that is adequate, but no greater than necessary, to achieve the goals set forth in 18 USC § 3553(a)(2). The Court must also consider the defendant's Guideline range, which functions as a benchmark and starting point in the sentencing process. *See Booker*, 543 U.S. at 259.

Reasonableness review determines whether a district court has abused its discretion in applying the 18 USC § 3553(a) factors. *See Gall v. United States*, 552 U.S. 38, 40, 51 (2007). It encompasses both substantive reasonableness, an evaluation of the length of the sentence, and procedural reasonableness, an evaluation of the district court's compliance with the *Booker* sentencing regime. *See Gall*, 552 U.S. at 51.

An appellate court analyzes the substantive reasonableness of a sentence by evaluating the totality of the circumstances and giving deference to the District Court's determination of the appropriate sentence based on the § 3553(a) factors. *United States v. McElwee*, 646 F.3d 328, 336 (5th Cir. 2011). Gall gives considerable discretion to the district courts in applying 18 USC § 3553(a). It is not the case, however, that "the district courts have a blank check to impose whatever sentences suit their fancy." *United States v. Jones*, 531 F.3d 163, 174 (2nd Cir. 2008). Gall leaves "no doubt that an appellate court may still overturn a substantively unreasonable sentence, albeit only after examining it through the prism of abuse of discretion..." *United States v. Pugh*, 515 F.3d 1179, 1191 (11th Cir. 2008).

Under §3553(a)'s parsimony clause, it is the sentencing court's duty to impose a sentence sufficient, but not greater than necessary to comply with the specific purpose set forth at 18 USC §3553(a)(2). Those four purposes are: (A) To reflect the seriousness of the offense, to promote the respect for the law, and to provide just punishment for the offense;

(B) To provide adequate deterrence to criminal conduct; (C) To protect the public from further crimes of the defendant; and, (D) To provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most efficient manner.

By not identifying how it reached maximum punishment, the district court imposed a substantively and procedurally unreasonable sentence on count-one, which must be vacated. Had this issue been raised on appeal, the 4th Cir. would have had no choice but to vacate the sentence and remand for sentencing. Thus, appellate counsel's decision not to raise the issue on appeal was deficient performance that prejudiced the defense.

## The District Court Erred in Denying Mr. Hightower's Motion to Dismiss Count-Two

The district court erred in denying Mr. Hightower's motion to dismiss count-two of the indictment (Extortion, 18 U.S.C. §1952). In Count Two of the indictment, Mr. Hightower was charged under 18 U.S.C. § 1952 with, in essence, using his phone to commit a crime of violence to further an extortion scheme. Extortion is defined as obtaining or attempting to obtain property from another, with his consent, by threat of or actual violence. This count should have been dismissed because it fails to state a crime in this case for two reason. First, a person cannot further extortion by killing off his only debtor because the death prevents the creditor from "obtaining" any property thereafter. Second, such a killing cannot be extortion because even if property were obtained after the killing the dead man cannot consent. The plain definitions and statutory provisions in this case establish that the allegations in count two cannot prove a crime. *See* (Doc. 164 at 3-7).

Even the district court noted the viability of the issue when it said, "[t]here appear to be significant issues presented regarding the ability of the Government to prove that the murder of D.W was in furtherance of the charged extortionate scheme for purposes of §1952(a)(2)(B)." (Doc. 231, at 19). More troubling, is that the issue has never been fully decided – as the Government did not, as the court noted, "address the defense contentions." *Id.* at 18.

Appellate counsel should have raised this issue on appeal, as it was clearly stronger than any of the two throw away issues that were perfunctorily made. *See United States v. Baker*, 719 F.3d 313, 318 (4th Cir. 2013) (requiring a showing that the issues that were raised on appeal were substantially weaker than the issue that the defendant claims should have been raised); *United States v. Holbrook*, 613 F. Supp. 2d 745, 774 (W.D. Va. 2009).

### The District Court Erred in Denying Mr. Hightower's Motion to Suppress

The district court erred in denying Mr. Hightower's motion to suppress. The facts show that Mr. Hightower had requested the presence of his counsel during repeated attempts by law enforcement to obtain a statement from his regarding this criminal matter. Police were sufficiently apprised of the fact that Mr. Hightower was represented by counsel, and still pursued his uncounseled statement. *See* ECF No. 162 (Motion to Suppress Statements). This issue was viable and should have been argued on appeal. Counsel's failure to do so was constitutionally deficient, and prejudiced the defense. *See Edwards v. Arizona*, 451 U.S. 477, 484 (1981) (questioning must stop when defendant invokes his right to counsel).

**GROUND SIX:** Mr. Hightower was denied his right to the effective assistance of counsel where his trial counsel failed to object to the prosecutor's repeated instances of misconduct.

Mr. Hightower was denied his right to the effective assistance of counsel where his

trial counsel failed to object to the prosecutor's repeated instances of misconduct.

"[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the

fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219

(1982). Habeas relief is warranted only if the prosecutor's comments in closing or opening

argument "so infected the trial with unfairness as to make the resulting conviction a denial

of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Because the standard of

review on federal habeas corpus is "the narrow one of due process, and not the broad exercise

of supervisory power," even improper argument does not necessarily violate a defendant's

constitutional rights. *Darden*, 477 U.S. at 189; *Parker v. Matthews*, 567 U.S. 37, 45-48 (2012)

(per curiam) (*Darden* constitutes the relevant clearly established Supreme Court law for claim

of prosecutorial misconduct in closing arguments, and is a general standard that affords state

court broad leeway its application).

In determining whether a due process violation occurred, "arguments of counsel

generally carry less weight with a jury than do instructions from the court." *Boyde v. California*,

494 U.S. 370, 384 (1990); *accord Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 898 (9th Cir.

1996) ("The arguments of counsel are generally accorded less weight by the jury than the

court's instructions and must be judged in the context of the entire argument and the

instructions"). "[R]eversible prosecutorial misconduct generally has two components: that

(1) the prosecutor's remarks or conduct must in fact have been improper, and (2) such

remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial." *United States v. Chorman*, 910 F.2d 102, 113 (4th Cir. 1990) (internal quotations omitted). Several factors are relevant as to whether an improper argument satisfies the second prong of *Chorman. United States v. Ollivierre*, 378 F.3d 412, 421-22 (4th Cir. 2004). These factors include:

(1) the degree to which the prosecutor's remarks had a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

*Id.* (internal quotation marks and citation omitted).

In determining whether a prosecutor's remarks were prejudicial, a court should also consider whether they were invited. *United States v. Wilson*, 135 F.3d 291, 299 (4th Cir. 1998) (citing *United States v. Young*, 470 U.S. 1, 12-13 (1985)). While a prosecutor should refrain from stating his personal opinions about a defendant's credibility during argument, *Young*, 470 U.S. at 1, courts have held that use of "I think" is not impermissible if it clearly communicates only a comment on the evidence. *United States v. Jaswal*, 47 F.3d 539, 544 (2d Cir. 1995); *see also United States v. Ollivierre*, 378 F.3d 412, 423 (4th Cir. 2004) (finding that, when the defendant claimed that the prosecutor improperly vouched for a witness, the prosecutor's preface of each the comments in question with "We submit to you," or "I submit

to you," indicated that the comments were argument and not personal belief). A prosecutor is also not allowed to express his personal belief that the defendant is guilty. *Id.* at 418.

Finally, it is well established that a conviction obtained through the knowing use of perjured testimony is a violation of a defendant's right to due process of law. *Napue v. Illinois*, 360 U.S. 264 (1959). This is true regardless of whether the prosecution solicited testimony it knew to be false or simply allowed such testimony to go uncorrected. *See Giglio v. United States*, 405 U.S. 150, 153 (1972). The Supreme Court has held that a defendant is entitled to relief on such a claim when "'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *Kyles v. Whitley*, 514 U.S. 419, 433 n.7 (1995) (quotation omitted); *see also Chandler v. Lee*, 89 Fed. Appx. 830, 835 (4th Cir. 2004).

Here, on multiple occasions, the prosecutor committed repeated instances of misconduct. To begin, in opening arguments, the government stated that Mr. Hightower began texting Mr. Wutoh directly for the first time in early August, rather than working through Mr. Crawford. Tr.50. But as the evidence showed at trial, Mr. Hightower always texted Mr. Wutoh directly, and not through Mr. Crawford. The government also knew it to be false when it stated in opening and closing argument that Mr. Hightower extortionately increased the loan that he had with Mr. Wutoh from $9,000 to $12,000 dollars, and the texts from August 2, 2013 at 9:30 and 9:44pm bears this out.

During closing argument, the government knew it to be false when it referenced Agent Holiday's testimony that the "come inside" text from September 14, 2013, was meant to suggest that Mr. Hightower was inside of Mr. Crawford's residence insisting that Mr.

Wutoh's time was up. Also, multiple instances of false testimony and statements were

allowed to go uncorrected by the prosecutor. For example:

- The government knew its Exhibit 40 to be false and the testimony of Agent Holiday the same where testimony was provided asserting that the May 18, 2013, jail call between Mr. Hightower and Carter was for the purposes of discussing Mr. Hightower's loan to Wutoh.
- The government knew its Exhibit 40 to be false and the testimony of Agent Holiday the same where testimony was provided giving the false impression that the two June 11, 2013, text messages were about something other than an argument between Mr. Hightower and Crawford.
- The government knew Agent Holiday's testimony to be false where it gave the false impression that Mr. Hightower repeatedly sent text messages to Mr. Wutoh in the days leading up to his death.
- The government knew Agent Holiday's testimony to be false where he testified that Mr. Hightower called Mr. Wutoh on September 5, 2013 at 6:19pm, and that Mr. Hightower followed up that call with a blank text message.
- The government knew Agent Holiday's testimony to be false where he testified that Mr. Hightower received a call from Mr. Crawford on September 9, 2013 at 12:06pm.
- The government knew Agent Holiday's testimony to be false when he testified that Mr. Hightower placed two back-to-back calls to Mr. Wutoh on September 16, 2013 at 7:38pm.
- The government knew that Agent Holiday's testimony to be false when he testified that Mr. Hightower followed up two calls to Mr. Wutoh on September 19, 2013, with a blank message at 3:54pm.
- The government used the vague memory of Zanita Jones to place false records in evidence (Exhibit 44), and to solicit false testimony from her regarding specific dates and times. For example, the government knew that Ms. Jones testified falsely when she testified that she did not meet Mr. Hightower for the first time on September 16, 2013, and that phone calls between her and Mr. Hightower may have been between Mr. Hightower and her sister.
- The government knew that Zanita Jones's testimony to be false when she testified that she met Mr. Hightower for the first time on September 20, 2013, to arrange the sale of her truck.
- The government knew Zanita Jones's testimony to be false when she testified that she met with Mr. Hightower on September 21, 2013, between 1:48 and 1:54pm, at her home at 3913 Barrington Road.
- The government knew Zanita Jones's testimony to be false when she testified that her truck was in her and her boyfriend's name.

At trial, counsel had a duty to protect Mr. Hightower from the prosecutor's repeated

instances of misconduct, but did not. The greater part of counsel's failure to do so appears

to have been directly related to his being uninformed about the facts of the case. Further,

the prejudice to Mr. Hightower cannot be understated. Counsel's failure to object and be

cognizant of the fact that Ms. Zanita Jones's testimony was false in relation to the facts should have "struck those learned in law like a bucket of ice water." *Higgs v. United States*, 711 F. Supp. 2d 479, 532 (D. Md. 2010). Her testimony, the testimony of Agent Holiday, and the prosecutor's misconduct, warrant reversal of Mr. Hightower's conviction.

GROUND SEVEN: Mr. Hightower was denied his right to the effective assistance of counsel where his trial counsel failed to subpoena and obtain correct T-Mobile cell phone records.

Mr. Hightower was denied his right to the effective assistance of counsel where his trial counsel failed to subpoena and obtain correct T-Mobile cell phone records. *See United States v. Velazquez*, 197 F. Supp. 3d 481 (E.D.N.Y. 2016) (counsel ineffective for failing to subpoena cell phone records); *Profitt v. Waldron*, 831 F.2d 1245 (5th Cir. 1987) (counsel ineffective for failing to obtain crucial records). Here, cell phone records played a major part in the government's evidence and theory of the case. It allegedly tied Mr. Hightower to the extortion scheme involving Mr. Wutoh, and to Mr. Wutoh's murder. Counsel Bardos initially subpoenaed cell phone record from T-Mobile, of which, T-Mobile provided incorrect records. Specifically, T-Mobile informed Mr. Bardos that the requested number (443-983-1240) belonged to Verizon, and not T-Mobile. They also informed Mr. Bardos that they only maintain call records on pre-paid accounts for 2 years, which was not relative to Mr. Hightower's case because he did not have a prepaid account, and call records were available for his number (and were provided to him) as late as May 2018.

Instead of re-issuing a subpoena to T-Mobile or explaining their error, counsel did nothing. In fact, counsel informed Mr. Hightower that T-Mobile only kept records for two

years and that the government had the only records, which records were demonstrably in error. After trial, Mr. Hightower learned that Mr. Barbos representations to him were erroneous.

The correct T-Mobile records would have showed that the government's evidence regarding Mr. Hightower's whereabouts on the night of (and day prior to) Mr. Wutoh's murder was in error. These records would have also showed the Agent Holiday and Ms. Zanita Jones, both testified falsely at trial. Moreover, the records would have further cast significant doubt over the government's theory of the case. Mr. Bardos had a duty to investigate the facts regarding the cell phone records in this case as they played a pivotal point in securing Mr. Hightower's conviction. *See Wiggins v. Smith*, 539 U.S. 510, 523 (2003) (counsel has a duty to investigate); *United States v. Russell*, 221 F.3d 615, 621 (4th Cir. 2000). Counsel's failure here was prejudicial and "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

GROUND EIGHT:   Mr. Hightower was denied his right to the effective assistance of counsel where his trial counsel's cumulative errors prejudiced the defense.

Mr. Hightower was denied his right to effective representation on the basis of trial and appellate counsel's cumulative errors. In *Cargle v. Mullin*, 317 F.3d 1196 (10thCir. 2003), the Court granted the Writ, in part, for cumulative error in a case involving multiple types of error. Here, as in *Cargle*, multiple constitutional violations had a synergistic effect on the verdict. 317 F.3d at 1221.

In *Cargle*, the Court said:

claims should be included in the cumulative-error calculus if they have been individually denied for insufficient prejudice. Indeed, to deny cumulative-error consideration of claims unless they have first satisfied their individual substantive standards for actionable prejudice "would render the cumulative error inquiry meaningless, since it [would] . . . be predicated only upon individual error already requiring reversal." *Willingham v. Mullin*, 296 F.3d 917, 935 (10th Cir. 2002).

317 F.3d at 1207.

This teaching from *Cargle* specifically included ineffective assistance claims. Thus, when such claims are denied for a lack of prejudice, they should be part of the cumulative error consideration.

The cumulative consideration required in *Cargle* is required as well by the Supreme Court. As the Supreme Court has said, no individual error can be harmless unless it is harmless in context, including in context of other errors. *O'Neal v. McAninch*, 513 U.S. 432, 436-38 (1995). In explaining its decision in *O'Neal*, the Court recited this illustrative language from *Kotteakos v. United States*, 328 U.S. 750, 764-65 (1946):

If, when all is said and done, the [court's] conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to

support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

*O'Neal*, 513 U.S. at 437-38 (emphasis added). Thus, cumulative error consideration – "pondering all that happened" – is also required by this Supreme Court precedent. *Id*. That consideration should take place for each error. Cumulative error is a means of assuring that process is complete. Even where the prejudice or harm from an individual error is not enough, the combined harm may well warrant relief for cumulative error.

As argued above, counsel's multitude of errors prejudiced the defense. From counsel's failure to (1) object to the prosecutor's repeated instances of misconduct; (2) obtain cell phone records; (3) investigate MVA records; (4) object to Detective Serrano's testimony at sentencing; (5) object to the murder cross-reference at sentencing; and (6) stipulating to a discovery agreement that deprived Mr. Hightower of the right to effective participate in his own defense. Moreover, appellate counsel's error in failing to raise potentially successful issues on appeal further highlight the *combined harm* that Mr. Hightower suffered at the hands of constitutionally deficient counsels. *See Cargle*, 317 F.3d at 1207.

Mr. Hightower has been denied the constitutional right to effective representation as envisioned by the Sixth Amendment. *See McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). Accordingly, his conviction should be set aside.

## CONCLUSION

For all the foregoing reasons, Mr. Hightower respectfully asks that the court grant

the writ, vacate his conviction and sentence, and further,

- Grant a Hearing on the matter; 3 and

- Grant such other relief as the court deems appropriate.

Respectfully submitted,

August 7, 2019

Matthew Hightower #40293-037
FCI Hazleton
P.O. Box 500
Bruceton Mills, WV 26525

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, under penalty of perjury, that on this 12th day of August, 2019,

I mailed a copy of the foregoing Memorandum in Support of the 2255 Motion, to the Office

of the U.S. Attorney, Judson T. Mihok, AUSA, 36 S. Charles Street, Baltimore, MD 21201.

Matthew Hightower
*Pro Se*

---

3 A hearing is required to resolve disputed issues of fact. *See United States v. Jones*, 600 Fed. Appx. 74, 80 (4th Cir. 2014).