**IN THE UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | * | |
| | * | |
| **Defendant/Defendant,** | * | **CIVIL No.: 19-CV-1719-GJH** |
| | * | |
| **v.** | * | |
| | * | **CRIMINAL No.: GJH-15-0322** |
| **MATTHEW HIGHTOWER,** | * | |
| | * | |
| **Respondent/Government.** | * | |

\* \* \* \* \* \* \*

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO VACATE, SET
ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

The United States respectfully submits this response opposing Defendant's Motion to

Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. For the reasons stated

below, this motion should be denied without a hearing.

**Procedural Background**

On September 22, 2016, the jury convicted the Defendant on two counts: Collection of

Credit by Extortionate Means, 18 U.S.C. § 894; and Use of Interstate Facilities with Intent to

Promote, Manage, Establish, or Carry on Extortion, 18 U.S.C. § 1952.  The jury found, via a

special verdict form, that the Defendant had murdered David Wutoh in furtherance of an

extortion plot.  JA 1834.[1]  On November 30, 2016, the Defendant was sentenced. After hearing

from both attorneys and the Defendant, the Court sentenced the Defendant on Count One to 240

months and on Count Two to 380 months in prison, to be followed by supervised release for a

term of five years.

On December 1, 2016 Defendant filed an appeal to the United States Court of Appeals

for the Fourth Circuit. This appeal was denied.  714 Fed. Appx. 238 (4th Cir. 2018).  On June 10,

---

[1] Citations marked "JA" are to the Joint Appendix on appeal in this case.  *United States v. Hightower*, 16-4796.

2019, the Defendant filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28

U.S.C § 2255. ECF 547.  The Court ordered a response. ECF 548. The Defendant's motion is

timely.

## Legal Analysis

### I.      Defendant's Claim of Ineffective Counsel Does Not Meet the *Strickland* Standard.

The Defendant claims that defense counsel was ineffective because his defense attorney:

(1) failed to "object to the prosecutor's repeated instances of misconduct;" (2) failed to

"subpoena and obtain T-mobile cell phone records;" (3) failed to "investigate and correct factual

errors related to MVA records;" (4) failed to "object to the application of the cross-reference to

second-degree murder;" (5) failed to "object at sentencing to the testimony of Detective Serrano

on the ground that the testimony was not relevant conduct within the meaning of USSG 1B1.3

[sic];" (6) "sign[ed] and stipulate[ed]… a discovery agreement that deprived Mr. Hightower of

his right to effectively participate in his own defense;" (7) failed to "argue on appeal: a. That Mr.

Hightower's sentence was substantively unreasonable; b. That the district court erred in denying

his motion to dismiss count-two (Extortion, 18 USC 1954) [*sic*];" and (8) that Counsel's

cumulative errors prejudiced the defense because counsel failed to take the previously listed

actions.[2]

Under *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court set out limited

circumstances under which the strong presumption against vacating convictions based on claims

of ineffectiveness of counsel may be overcome. The Defendant must demonstrate: (1) that

---

[2] On August 14, 2019 (over two months after filing his initial habeas petition), the Defendant filed s "Memorandum of Law" setting out in detail further factual allegations. ECF 549.  Many of the Grounds in this "Memorandum of Law" are distinct from and contain additional (unfounded) factual assertions from his original petition.  The Government therefore responds here only to the facts in the original petition as ordered by this Court.  ECF 548.

counsel's performance was deficient, requiring showing that "counsel made errors so serious that counsel was not functioning as the counsel guaranteed Defendant by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense by showing that counsel's errors were "so serious as to deprive Defendant of a fair trial, a trial whose result is reliable." at 687.  "The burden to 'show that counsel's performance was deficient' rests squarely on the Defendant." *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (quoting *Strickland*, 466 U.S. at 687).

### A. The Defendant's Claim Does Not Meet the *Strickland's* Performance Standard.

With respect to *Strickland's* performance factor, the Defendant must establish that his counsel's actions were "not supported by a reasonable strategy."  *Massaro v. United States*, 538 U.S. 500, 505 (2003).  When engaging in this analysis, the Supreme Court has stated that "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Burt*, 134 S.Ct. at 17. In doing so, a court may consider whether counsel executed "basic duties," which include "assist[ing] the Defendant,…advocat[ing] the Defendant's cause and…consult[ing] with the Defendant on important decisions…."  *Id.* at 688. However, the ultimate inquiry is "whether counsel's assistance was reasonable considering all the circumstances," and "[j]udicial scrutiny of an attorney's performance must be highly deferential." *Strickland*, 466 U.S. at 688–89. A criminal defense attorney's representation will not be deemed ineffective unless counsel's "acts or omissions were outside the wide range of professionally competent assistance." *United States v. Fulks*, 683 F.3d 512, 517 (4th Cir. 2012) (quoting *Strickland*, 466 U.S. at 690). Finally, counsel need not be unreasonably exhaustive in their defense as the law acknowledges the undesirability of tilting at windmills. *Lovitt v. True*, 403 F.3d 171, 179 (4th Cir. 2005) (quoting *Wiggins v. Smith*, 539 U.S. 510, 512 ("Strickland does not require counsel to investigate every

conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the Defendant at sentencing.")

Defendant's first contention is that Counsel failed to object to misconduct. However, no evidence is provided to support this claim. Defendant merely states that his counsel "throughout the trial… allowed false testimony to go uncorrected." Hightower Grounds at 1. As there is no evidence to support the allegation that the witnesses, including a federal Special Agent, were testifying falsely.  Defendant has failed to carry his burden of proof.

Defendant's second claim is that Counsel's decision not to subpoena T-Mobile for cellphone records was tantamount to ineffective assistance of counsel. Here Defendant makes the wholly unsupported claim that "T-Mobile provided incorrect records to satisfy the subpoena," and that Defendant alerted counsel that the response was "in error."  Hightower Grounds at 1 Again, neither the record nor Defendant himself provide evidence that there was any deficiency in T-Mobile's cellphone records. This is merely a reiteration of Defendant's previous argument to the district court that T-Mobile provided spurious records and that the U.S. Attorney's office doctored phone records. JA 2009. The Defendant offers no proof to substantiate his claim.

Defendant's third claim is that Counsel failed to correct factual errors related to the MVA record. Defendant here indicates that this failure was due to Counsel's failure to impeach the government's evidence of his location "with evidence to the contrary that Mr. Hightower was not on the scene, nor in the area, when the shooting took place."  Hightower Grounds at 1. Defendant's argument boils down to Counsel not producing nonexistent evidence.  The government produced evidence of his proximity to the scene of the crime via cellphone records. JA 1524-1527.  But Defendant provides no evidence that he was elsewhere, and evidence –

admitted at trial and on which defense counsel performed significant cross examination – shows that he was at the scene of the crime.

Defendant's fourth claim is that Counsel was ineffective for failing to object to the application of the cross-reference to second-degree murder. Defendant states that Counsel "did not object arguing that the cross-reference did not apply since the court did not find the requisite intent to kill."  Hightower Grounds at 2 (internal quotations omitted).   But Defendant's counsel argued vigorously against a cross reference for first degree murder – the matter at issue in sentencing -- stating that "where the parties disagree is that the government believes that the cross-reference to 2 offense is first-degree murder, and we believe that the cross-reference offense should be second degree." JA 1973. Defendant's counsel had to do so because Defendant had been convicted by the jury of murder. JA 1976.  Defense counsel's argument under the Guidelines for second degree murder was an attempt to get him the minimum sentence possible for the crimes of conviction.

Defendant's fifth claim is that is that Counsel was ineffective for failing to object at sentencing to the testimony of Detective Serrano on the grounds that that the "testimony was not relevant conduct within the meaning of USSG 1B1.3 [sic]."  Hightower Grounds at pp. 2. Defendant explains that this is because Detective Serrano's testified at sentencing that "Mr. Hightower had shot another individual, unrelated to the current matter, at some time previously." Hightower Grounds at 2. Defendant provides no information to further the assertion that this does not qualify as relevant conduct. In a similar vein, Counsel did in fact effectively object to parts of Detective Serrano's testimony.  *See* JA 1930.  And counsel engaged in a vigorous cross examination.  JA 1932-1946.   Further, there is no evidence that the judge used Detective

Serrano's testimony in any relevant way to formulate sentencing, and likewise sentenced within the Federal Sentencing Guidelines.

Defendant's sixth claim is that Counsel was ineffective "by signing and stipulating to a discovery agreement that deprived Mr. Hightower of his right to effectively participate in his own defense." Hightower Grounds at 2. Defendant states that this is because "[w]ithout Mr. Hightower's knowledge nor consent counsel signed and stipulated to a discovery agreement that provided that Mr. Bardos would not provide Mr. Hightower copies of any discovery, which in turn, prevented Mr. Hightower from noting to Mr. Bardos, errors of fact in the government's case. Mr. Bardos did not sit with Mr. Hightower and go over all of the discovery material." *Id.* The agreement, contained in its entirety in the Joint Appendix, is the standard agreement utilized by United States Attorney's Office. JA 285. The clause Defendant refers to is contained within provision 5, and forbids counsel from giving copies of the material to client without prior consent from the U.S. Attorney's Office. JA 286. This is a standard feature of these agreements, thousands of which are utilized every year and serve to protect victims and witnesses from reprisal as discovery can serve as an unintentional roadmap for revenge. Aside from the safety implications, if singing this agreement was ineffective, then nearly every counsel who represents an individual charged by this office has been ineffective.

Defendant's seventh claim is that Appellate Counsel was deficient for failing to argue on appeal that 1) "the sentence was substantially unreasonable;" 2) that "in denying his motion to dismiss count-two;" and 3) that "the district court erred in denying his motion to suppress statements." Hightower Grounds at 2. Defendant admits that his "motions to suppress statements and to dismiss were filed… and denied."  Hightower Grounds at 2. Defendant has presented no example of why these decisions are in error, nor even provided a view of where the errors might

lie. Defendant also provides no standard for what might constitute unreasonable sentencing. This is particularly glaring, as the Federal Sentencing Guidelines were applied and Defendant was given a sentence towards the low end. As the burden of proof lies with the Defendant and as Defendant has failed to present any evidence or legal theories as to why his counsel was inadequate, his claim must fail.

**B.    The Defendant's Claim Does Not Meet *Strickland's* Prejudice Standard**

With regard to the second *Strickland* factor, even if Defendant could prove that sentencing and appellate counsel's performance was inadequate under *Strickland*, Defendant fails to prove any prejudice.

Defendant's eighth and final claim is that "Counsel's cumulative errors prejudiced defense where counsel: a. [f]ailed to object to prosecutorial misconduct; b. [d]eprived Mr. Hightower of effectively participating in his own defense; c. [f]ailed to obtain correct T-Mobile phone records; d. [f]ailed to investigate and correct factual errors related to MVA records; e. [f]ailed to file a motion to compel the government to provide copies of original cell phone records; f. [f]ailed to object to the application of the cross-reference to second-degree murder; g. [f]ailed to object to the testimony of Detective Serrano on the grounds that such testimony was not relevant to conduct; and h. [f]ailed to object to errors at trial and sentencing. Hightower Grounds at 2.

Here, Defendant has merely rephrased his previous grievances into a tautology where the phrase "prejudice" is added. In keeping with the trend of Defendant's previous claims Defendant states a conclusion in lieu of providing any evidence that the outcome was prejudiced. As such, even if all of Defendant's statements were factually true he would still fail to meet the prejudice prong of *Strickland*. No evidence is provided that any of the claimed conduct prejudiced the

outcome in any way.  The Defendant was convicted of murder after a trial spanning almost three

weeks, with seventeen witnesses and over one hundred exhibits, represented by able and active

defense counsel.

### II.      Defendant is Not Entitled to an Evidentiary Hearing

Motions pursuant 28 U.S.C § 2255 are reviewed in the United States district courts in a

"three-step process…: (1) preliminary screening, (2) review to determine the necessity of

holding an evidentiary hearing after discovery and expansion of the record and (3) decision

following an evidentiary hearing."  *Fenton v. United States*, 914 F.Supp.2d 79, 81–82 (D. Mass.

2012).  A hearing is not required when "the motion and the files and records of the case

conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).  Courts have

determined that hearings are not necessary where "the motion ... fail[s] to allege sufficient facts

or circumstances upon which the elements of constitutionally deficient performance might

properly be found ... [or] where the Defendant has failed to present any affidavits or other

evidentiary support for the naked assertions contained in his motion." *United States v. Taylor*,

139 F.3d 924, 933 (D.C.Cir.1998) (internal quotation marks and citation omitted).  *Accord*

*United States v. McGill*, 11 F.3d 223, 225–26 (1st Cir. 1993).

In this case the Defendant failed to satisfy either *Strickland* prong and his claims are

completely meritless.  Therefore, the motion should be denied and no hearing is necessary.

WHEREFORE, for the foregoing reasons the Government respectfully requests that this

Court deny the Defendant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28

U.S.C. § 2255.

Respectfully submitted,

Robert K. Hur
United States Attorney

By:_____/s/_____
    Aaron S.J. Zelinsky
    Judson T. Mihok
    Assistant United States Attorney
    36 S. Charles Street
    Baltimore, Maryland 21201
    (410)-209-4800

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I caused a true and correct copy of the foregoing government's

Response to Defendant's Motion to Vacate, Set Aside, or Correct Sentence to be mailed first

class postage prepaid this September 3, 2019, to:


Matthew Hightower, Reg. # 40293-037
FCI Hazleton
P.O. Box 500
Bruceton Mills, WV 26525


/s/ _____
Aaron S.J. Zelinsky