EXHIBIT NO. 1

HOLIDAY TRANSCRIPT 19 - 19.11

1  A.  Yes.

2  Q.  And did you cross-check that summary with the underlying

3  documents to make sure that it accurately reflected the

4  information provided?

5  A.  Yes.

6  Q.  When call-detail records in particular are provided, are

7  they all provided in Eastern Standard Time -- that is, our time

8  zone here in Baltimore?

9  A.  No.

10 Q.  And why aren't they all in Eastern Standard Time?

11 A.  Some carriers, because the way the communications are

12 transmitted, it'll go through other time zones outside of the

13 Eastern Standard Time zone.

14 Q.  And is it possible that on the same sheet, voice

15 information might be given in one time zone and text

16 information might be given in another?

17 A.  Correct.

18 Q.  And on the summary that you prepared, you have turned

19 everything for the ease of the jury into Eastern Standard Time;

20 is that correct?

21 A.  Correct.

22      MR. ZELINSKY:  Your Honor, we would move to admit

23 Government's Exhibit 40.

24      THE COURT:  Well, it was admitted as a summary.  I

25 just want to be -- you used Eastern Standard Time.  Are you

DEFENDANT'S EXHIBIT NO. 1, 19
CASE NO.: MJG-15-322/GJH-15322
IDENTIFICATION: HOLIDAY TRANSCRIPT 428
ADMITTED:

1   A.   Yes.

2   Q.   And it's laid out a little differently, but it has all of

3   the information.  So, for instance, here it says "date and

4   time."  On this exhibit, what is the date and time given?

5   A.   The date and time is 5/19/2013 at 5:02 a.m. UTC minus

6   zero.

7   Q.   And what is UTC?

8   A.   UTC is coordinated universal time.

9   Q.   So that's not the same, just to be clear, as Eastern

10  Standard Time, is it?

11  A.   No.

12  Q.   Do you know how far off it is?

13  A.   Four hours ahead of Eastern Standard Time.

14  Q.   And in this case is that frequently used by mobile

15  carriers?  Do they tend to use UTC?

16  A.   Yes.

17  Q.   Now, on Exhibit 40, it's all been put into Eastern

18  Standard Time.  These exhibits have not.  They're all in UTC;

19  is that right?

20  A.   Correct.

21  Q.   But you have also very recently reviewed this information;

22  is that right?

23  A.   Correct.

24  Q.   And are you confident, when you've reviewed this

25  information, that it, as well as Exhibit 40, accurately

*Douglas J. Zweizig, RDR, CRR - Federal*

DEFENDANT'S EXHIBIT NO. 1, 19.1
CASE NO.: MJG-15-322/GJH-15322
IDENTIFICATION: HoLIDAy TRANSCRIPT
ADMITTED: 439

1  reflects what is contained in the underlying voluminous
2  documents?
3  A.   Correct.
4  Q.   And just to be clear, many of the -- well, let me ask you
5  this: Did you compare this Exhibit 40A to Exhibit 40?
6  A.   Yes.
7  Q.   And there is a good deal of overlap; is that right?
8  A.   Yes.
9  Q.   But we'll be referring back and forth sometimes to the two
10 of them.
11      So returning now to Government's Exhibit 40 on Page 1.
12      MR. ZELINSKY:   Thank you, Mr. Thompson.
13 BY MR. ZELINSKY:
14 Q.   On May 18th, Message 1 you've walked us through.
15      Could you walk us through the conversation that's
16 contained at 1 through 5, please.
17 A.   Okay. On 5/18/13, at approximately 9:03 a.m.,
18 Davon Carter called Matthew Hightower; source, jail call.
19      On Line No. 2, 5/20/13, at approximately 9:38 a.m.,
20 Davon Carter contacted Matthew Hightower via call from jail
21 call.
22      Line No. 3, which is 5/20/2013 at approximately 4:01 p.m.,
23 Harry Crawford sends Dave Wutoh iMessage [reading]: Are me and
24 Matt on track to get our money back on Tuesday? I hope.
25      Line No. 4, 5/20/2013 at approximately 4:11 p.m.,

*Douglas J. Zweizig, RDR, CRR - Fede*

DEFENDANT'S EXHIBIT NO. 1, 19, 2
CASE NO.: MJG-15-322/GJH-15322
IDENTIFICATION: HOLIDAY TRANSCRIPT 440
ADMITTED:

```
 1        (Bench conference concluded.)
 2   BY MR. ZELINSKY:
 3   Q.    Agent Holiday, returning now to Government's Exhibit 40,
 4   on Line 23, the event that follows that jail call on your
 5   summary exhibit, is there a conversation or a relevant message
 6   on Line 23?
 7   A.    Yes.
 8   Q.    And what is it?
 9   A.    At approximately 9:32 a.m., Harry Crawford sent
10   David Wutoh a text, SMS message reading [reading]:  Now you got
11   Elma blaming me for what you did to Matt.
12   Q.    And was there another text message after that?
13   A.    Yes.
14   Q.    And what did it say?
15   A.    At approximately 12:33 p.m., Crawford sent Wutoh an
16   iMessage [reading]:  Your boy couldn't take the heat so he
17   resigned.
18   Q.    And after that?
19   A.    At approximate -- on 6/11/13, at approximately 2:09 p.m.,
20   Crawford sent Wutoh another iMessage [reading]:  What is this
21   bullshit?  I got nothing out of you and Dave agreement, not a
22   "penning," not a cookie, not a blowjob, not even a thank you.
23   Whatever you and Dave did was between you and Dave.  I had no
24   details.  Only thing I need from you is an apology for your
25   stupid-ass text.
```

*Douglas J. Zweizig, RDR, CRR - Fe(...)*

DEFENDANT'S EXHIBIT NO. 1, 19.3
CASE NO.: MJG-15-322/GJH-15322
IDENTIFICATION: HOLIDAY TRANSCRIPT 461
ADMITTED: _____

```
 1   Q.   And this is from whom to whom?
 2   A.   This is from Harry Crawford to David Wutoh.
 3   Q.   And in the course of your investigation you referenced
 4   earlier, you had found another person named Dave that was
 5   relevant to a business transaction; is that right?
 6   A.   That's correct.
 7   Q.   And that was who?
 8   A.   Dave Dalton.
 9   Q.   On the next page, Contact 26, what is that contact?
10   A.   On 6/11, at approximately 4:35 p.m., Crawford messages
11   Wutoh again [reading]:  You asked me about investing and set
12   the meeting up.  Now you have nothing to do with it.  That's
13   cool, though.
14   Q.   Okay.  There is then a --
15            MR. ZELINSKY:  Mr. Thompson, we will need the overhead
16   again for a moment.
17   BY MR. ZELINSKY:
18   Q.   You'll see there -- is there another text message on 6/11?
19   A.   Yes.
20   Q.   What does it say?
21   A.   [Reading]:  Let's go get drunk.
22   Q.   And that's from whom to whom?
23   A.   Outgoing from Dave Wutoh to Harry Crawford.
24   Q.   Okay.  Returning your attention for a moment to
25   Transcript 25A, the call that we had heard a little earlier --
```

Douglas J. Zweizig, RDR, CRR - Fe[...]

DEFENDANT'S EXHIBIT NO. 1, 19.4
CASE NO.: MJG-15-322/GJH-15322
IDENTIFICATION: HOLIDAY TRANSCRIPT
ADMITTED: 462

```
 1            MR. BARDOS:  Thank you, Judge.)
 2        (Bench conference concluded.)
 3   BY MR. ZELINSKY:
 4   Q.   Returning to Exhibit 40, you had just read Line 25, Agent;
 5   is that right?
 6   A.   Yes.
 7   Q.   And just to be clear, the text of this information you
 8   included verbatim; that is --
 9            THE DEFENDANT:  Objection.
10            MR. BARDOS:  Sit down.
11            THE DEFENDANT:  No.  I have -- I have to say
12   something, Your Honor.
13            MR. BARDOS:  Sit down.  Sit down.
14            THE COURT:  I guess, Mr. Bardos, you have to talk to
15   your client because I think you have to speak.
16        (The defendant conferred with counsel.)
17            THE COURT:  Please.  Mr. Zelinsky, please.
18            MR. ZELINSKY:  I'm sorry, Your Honor?
19            THE COURT:  Why don't you proceed.
20   BY MR. ZELINSKY:
21   Q.   This message that's here on Line 25, Agent Holiday, is a
22   message from Mr. Crawford to Mr. Wutoh; is that right?
23   A.   Yes.
24   Q.   And you transcribed them verbatim.  Just to be clear,
25   there aren't -- these typographical errors were in the original
```

*Douglas J. Zweizig, RDR, CRR - Fed*

DEFENDANT'S EXHIBIT NO. *1, 19, 5*
CASE NO.: MJG-15-322/GJH-15322
IDENTIFICATION: *Holiday Transcript 468*
ADMITTED:

```
 1  message.  It says "a penning" in there?
 2  A.   Correct.
 3  Q.   Moving to the next page, on Page 26 -- I'm sorry, on
 4  Line 26, there is a message there.  What is that message?
 5  A.   At approximately 4:35 p.m., Harry Crawford sent
 6  David Wutoh an iMessage.  [Reading]:  You asked me about
 7  investing and I set the meeting up.  Now you have nothing to do
 8  with it.  That's cool, though.
 9  Q.   And after that, was there another message that was sent?
10  A.   Yes.  On the same date, at approximately 9:57 p.m.,
11  Crawford responded to -- sent Wutoh another message
12  [reading]:  Call Matt.  Offer him something.
13  Q.   And moving on to Line 28, did Wutoh respond?
14  A.   At approximately 9:58 p.m., Wutoh responded to Crawford
15  [reading]:  I did.  He wants to stick to the original deal, but
16  I will give him extra.
17  Q.   And after that was there another message from Wutoh?
18  A.   Yes.  Again, at approximately 9:58 p.m., Wutoh sent
19  Crawford another message [reading]:  You too.
20  Q.   And in Line 30 was that followed by a voicemail?
21  A.   Yes.  At approximately 12 -- on 6/12/2013 at approximately
22  12:44 p.m., Harry Crawford sent Dave Wutoh a voice message.
23           MR. ZELINSKY:  And that's Exhibit 38 and 38A, if we
24  could turn there.
25           And I think we're ready.
```

Douglas J. Zweizig, RDR, CRR - Fec

DEFENDANT'S EXHIBIT NO. 1, 19.6
CASE NO.: MJG-15-322/GJH-15322
IDENTIFICATION: HOLIDAY TRANSCRIPT
ADMITTED:

```
 1    chance to have a consultation.
 2            MR. BARDOS:  Thank you, Judge.
 3            THE COURT:  Let's get the witness out.)
 4        (Bench conference concluded.)
 5            THE COURT:  Let me explain the whole -- the key thing
 6    is to utilize your time as valuably as possible.  And we're
 7    juggling with the potential witnesses and with your lunch,
 8    which we think is 12:30 at this point.  So right now we're
 9    going to proceed.  And let me see -- let's see where we go.
10            All right.  Mr. Bardos, do you have something else?
11            MR. BARDOS:  Yes.  I'm sorry, Your Honor.  We would
12    re-call Agent Holiday, please.
13            THE COURT:  Okay.
14            THE CLERK:  The witness on the stand is Agent Holiday.
15            Agent Holiday, I remind you that you remain under
16    oath.
17            MR. BARDOS:  I'll be with you in one second.
18        SPECIAL AGENT CLARENCE HOLIDAY, DEFENDANT'S WITNESS,
19    PREVIOUSLY SWORN.
20                         DIRECT EXAMINATION
21    BY MR. BARDOS:
22    Q.   Good afternoon.
23    A.   Good afternoon.
24    Q.   I brought you back because I wanted to talk to you about
25    one of the things you said last week.
```

*Douglas J. Zweizig, RDR, CRR - Fede*.

DEFENDANT'S EXHIBIT NO. 1, 19.7
CASE NO.: MJG-15-322/GJH-15322
IDENTIFICATION: HOLIDAY TRANSCRIPT
ADMITTED: 1273

1274

HOLIDAY - DIRECT

1   You put together Exhibit 40 that was the list of contacts
2   between Mr. Wutoh and Mr. Crawford, Tony Wutoh, a bunch of
3   people; correct?
4   A.   Correct.
5   Q.   In that entire list, did you ever see any communications
6   between Michael Fleming and David Wutoh?
7        THE CLERK:  Agent, I need you to get a little closer
8   to that microphone.
9        THE WITNESS:  I do not.  I don't recall.
10  BY MR. BARDOS:
11  Q.   Okay.  You were asked about Line 133 where it says -- the
12  text is [reading]:  Yes, you owe me 12K?
13  A.   Correct.
14  Q.   Do you remember being asked about that on redirect by
15  Government counsel?
16  A.   I don't -- no, I don't recall.
17  Q.   Do you remember Government counsel suggesting that this
18  was a text from Mr. Hightower in which he was increasing the
19  amount of the loan that he expected to get paid back?
20  A.   That's possible.
21  Q.   That instead of the $9,000 he was owed, he's now asking
22  for 12?
23  A.   Yes.
24  Q.   And so instead of the 33 percent interest rate that took
25  him to 20, he's now asking for $23,000?

*Douglas J. Zweizig, RDR, CRR - Feder*

DEFENDANT'S EXHIBIT NO. 1, 19.8
CASE NO.: MJG-15-322/GJH-15322
IDENTIFICATION: HOLIDAY TRANSCRIPT
ADMITTED: 1274

1   A.   Correct.

2   Q.   And that somehow suggested some sort of high level of

3   greed on behalf of Mr. Hightower.

4        Do you remember all those questions?

5   A.   I do -- yes, now I do.

6   Q.   Okay.  Let me show you Defense Exhibit 14.  This is the

7   Talkz data base from Mr. Crawford's phone?

8   A.   Correct.

9   Q.   Do you see the line at the bottom [reading]:  Yes, you owe

10  me 12K?

11  A.   Correct.

12  Q.   Okay.  8 -- this is 8/12 -- 8/2/13, 21:44; right?  Right?

13  A.   Correct.  Yes.

14  Q.   Okay.  That's 133, same date, same time, text

15  (indicating); correct?  It's the same thing; right?

16  A.   Correct.

17  Q.   But it's not from Mr. Hightower.  It's from Mr. Crawford,

18  'cause his is the number that's '5540?

19  A.   Correct.

20  Q.   So this text doesn't indicate anything about

21  Mr. Hightower's changing the terms of the loan, does it?

22  A.   No.

23  Q.   In fact, this text is consistent with prior texts from

24  Mr. Crawford in which he said, You owe me 6,000 plus 6,000,

25  which is 12.

Douglas J. Zweizig, RDR, CRR - Fede

DEFENDANT'S EXHIBIT NO. 1, 19.9
CASE NO.: MJG-15-322/GJH-15322
IDENTIFICATION: HOLIDAY TRANSCRIPT
ADMITTED: 1275

1    Correct?
2  A. That would be correct.
3  Q. Now, I'm not -- you have hundreds of entries on this.
4  A. Yes.
5  Q. And I'm not in any way faulting you for a mistake. I'm
6  just asking you: This was an error on Exhibit 40; correct?
7  A. That line, yes.
8  Q. Out of the hundreds, but this one happened to be?
9  A. Correct.
10 Q. Okay. You presented a series of phone calls between
11 Mr. Hightower and --
12         MR. BARDOS: That's all I have. Thank you, Agent. I
13 appreciate you coming back.
14         THE COURT: All right. Counsel, anything?
15         MR. ZELINSKY: Just very briefly, Your Honor.
16                    CROSS-EXAMINATION
17 BY MR. ZELINSKY:
18 Q. Agent Holiday, is it fair to say you've reviewed a lot of
19 records in this case?
20 A. Yes.
21 Q. And you spent many hours putting together this summary and
22 checking it?
23 A. Yes.
24 Q. And, in fact, you received additional texts from the
25 defense that you then checked as well to put in your summary;

Douglas J. Zweizig, RDR, CRR - Fed

DEFENDANT'S EXHIBIT NO. 1, 19.10
CASE NO.: MJG-15-322/GJH-15322
IDENTIFICATION: HOLIDAY TRANSCRIPT
ADMITTED: 1276

1  is that right?
2  A.   Yes.
3  Q.   And, in fact, this summary was shared with the defense
4  well prior to trial for their review; is that right?
5  A.   Correct.
6  Q.   Could you -- if we could toggle to the computer,
7  Mr. Thompson.
8       Could you read the text at Line 132.
9  A.   [Reading]:  I gave you 15K with 5K interest.  So far you
10 gave me 11K, which leaves 9K balance.  And you promised a turbo
11 or more interest, but I just want my 9K.
12      MR. ZELINSKY:  No further questions, Your Honor.
13      MR. BARDOS:  That was brief.
14 (Witness excused.)
15      THE COURT:  Anything else, Mr. Bardos?
16      MR. BARDOS:  No redirect, Your Honor.  Thank you.
17      THE COURT:  Okay.
18      MR. BARDOS:  I do have one exhibit that I want to
19 introduce.
20      THE COURT:  Yes.  Why don't you put the exhibit in.
21      MR. BARDOS:  This is Defense Exhibit 15.
22 (Counsel conferred.)
23      MR. BARDOS:  This is the phone call -- the 9-1-1 call
24 made by Andrea Brown at 9:22 -- on 9/22/13 at approximately
25 3 -- 2:55 in the morning.  And I'm just -- I'm not going to

*Douglas J. Zweizig, RDR, CRR - Fede*

DEFENDANT'S EXHIBIT NO. 1, 19.11
CASE NO.: MJG-15-322/GJH-15322
IDENTIFICATION: HOLIDAY TRANSCRIPT
ADMITTED: 1277